WO

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

Jes Solar Co., LTD, a South Korean Corporation;
Airpark Co., LTD, a South Korean Corporation;
and Hankook Technology, Inc., a South Korean Corporation,

    Plaintiffs,

v.

Matinee Energy, Inc., a Nevada Corporation;
Samsun, LLC, a Virginia LLC; S. Chin Kim;
John S. Lee; Chun Rae Kim; Paul Jeoung; Tong Soo Chung,

    Defendants.

CV 12-626 TUC DCB

**ORDER**

The Court denies Defendants Matinee, S. Chin Kim and Tong Soo Chung's Motion to Set Aside Default, grants Defendant Chun Rae Kim's Supplemental Motion to Vacate Default. The case shall be set for trial as to damages for Defendants Matinee, S. Chin Kim and Tong Soo Chung. A case management scheduling conference shall be held as to Defendant Chun Rae Kim.

### A.  Case Background

Plaintiffs filed the Complaint on August 21, 2012, alleging that the Defendants bilked them out of approximately $2,000,000 in advance fees for a bogus solar power plant project to be constructed in Benson, Arizona. Plaintiffs seek damages totaling approximately $5,000,000.

On December 11, 2012, the Clerk of the Court entered default against all the Defendants when they failed to appear. On December 13, 2012, the Plaintiffs filed a Motion

for Entry of Default Judgment and for a hearing to determine the amount of unliquidated damages included in the claims for relief, set a sum certain for damages by calculation, and for the Court to award punitive damages. Still Defendants did not appear. The Court, however, did not set a hearing. Under Federal Rule 55 of the Federal Rules of Civil Procedure, the Court "may" conduct a hearing to determine the amount of damages, Rule 55(b)(2)(B), but a hearing is unnecessary if the evidence submitted is sufficient to support the damages request, or if the amount claimed may be discerned from definite figures in the documentary evidence or affidavits, *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir.1997), or if the amount claimed is one capable of ascertainment from definite figures in the documentary evidence or affidavits, *United Artists Corp. v. Freeman,* 605 F.2d 854, 867 (5th Cir.1979). Because the Court's calendar was extremely heavy at the time, it asked the Plaintiffs to submit the evidence of damages by affidavit. Plaintiff did so on January 28, 2013, by filing a Motion to Supplement the Motion for Default Judgment.

On May 12, 2013, the Defendants Matinee Energy Inc., Tong Soo Chung, Paul Jeoung, and S. Chin Kim appeared by filing a Motion to Set Aside the Default and Opposition to Motion for Entry of Default Judgment. On April 12, 2013, Defendant Chun Rae Kim filed, *pro se,* a Motion for Joinder in the Motion to Set Aside the Default. On May 15, 2013, after securing counsel, Defendant Chun Rae Kim filed a Supplemental Motion to Vacate Default and Opposed Plaintiffs' Motion for Entry of Default Judgment.

The defaulted Defendants are Defendant Matinee, a Nevada corporation, engaged in the development of power plant projects involving solar power in the states of California, Arizona, and Nevada. (Amended Complaint (AC) (Doc. 25) at 24.) Defendants S. Chin Kim, Paul Jeoung, and Tong Soo Chung are employees of Matinee: Tong Soo Chung is the CEO of Matinee East-Asia region, (AC at 36) and S. Chin Kim is the Vice President of Matinee, (AC at 43). Defendant Chun Rae Kim is the son-in-law to Defendant John S. Lee,

the owner of Defendant Samsun, a Virginia corporation, engaged in assisting with Matinee solar power plant construction projects. Defendants Samsun and John S. Lee have not appeared in the case.

## **B.   Federal Rule Civil Procedure 55**

Default is governed by Fed.R.Civ.P. 55(a) and entry of default judgment is made pursuant to Fed.R.Civ.P. 55(b)(2). Entry of default, here, was provided for as follows: "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."

Plaintiffs seek a default judgment under Fed.R.Civ.P. 55(b), which provides: "Judgment by default may be entered . . . By the Court. [And],. . . If the party against whom judgment by default is sought has appeared in the action, the party . . . shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States."

Defendants seek to set aside the default, under Rule 55(c), which provides: "The court may set aside an entry of default for good cause . . . ." In determining whether good cause exists, a court must consider three factors: "'(1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the default.'"*Brandt v. Am. Bankers Ins. Co. of Fla.,* 653 F.3d 1108, 1111 (9th Cir.2011) (quoting *Falk v. Allen,* 739 F.2d 461, 463 (9th Cir.1984)). These factors are disjunctive, *Brandt,* 653 F.3d at 1111 (quoting *Falk,* 739 F.2d at 463), meaning

that the court may refuse to set aside the default if it holds any one of the three factors is true. *U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle,* 615 F.3d 1085, 1091 (9th Cir.2010).

In applying the *Falk v. Allen* factors, the Court must remember that a judgment by default is a drastic step which is appropriate only in extreme circumstances, and a case should, whenever possible, be decided on the merits. *Mesle,* 615 F.3d at 1091 (quoting *Falk,* 739 F.2d at 463). In the context of setting aside a default, rather than a default judgment, the Court's discretion is especially broad. *Brady v. United States*, 211 F.3d 499, 504 (9th Cir. 2000)*, O'Connor v. State of Nev.,* 27 F.3d 357, 364 (9th Cir.1994).

In the motion to set aside the default, the Defendants Matinee, S. Chin Kim, Paul Jeoung and Tong Soo Chung decline to respond item by item to the allegations in the Complaint "because of the extreme complexity of the case" and because it is unnecessary. (Motion (Doc. 48) at 3.) Defendants assert the "Plaintiffs bear the burden of establishing that there is some factual basis to the Complaint and damages." *Id.* Defendants, however, bear the burden of demonstrating the factors tip in their favor for determining whether or not to set aside the default. *Franchise Holding II*, 375 F.3d at 926. And, all facts alleged in the Complaint are taken as true until and unless the default is set aside. *Cripps v. Life Insur. Co. of North Am.,* 980 F.2d 1261, 1267 (9th Cir. 1992).

### 1. Whether Defendants engaged in culpable conduct

"A defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *TCI Group Life Ins. Plan v. Knoebber,* 244 F.3d 691, 697 (9th Cir.2001) (emphasis in original). For a failure to answer to be intentional, "the movant must have acted with bad faith." *Mesle,* 615 F.3d at 1092. It is not enough that a movant simply made a conscious choice not to answer, *id.,* or

4

neglectfully[1] failed to answer, yet offers a "credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process[,]" he or she is not necessarily culpable. *TCI Group,* 244 F.3d at 697–98 (holding family emergency explanation for missing deadline was weak, but not the result of deviousness or willfulness); *Bateman v. U.S. Postal Service,* 231 F.3d 1220, 1225 (9th Cir.2000)). Culpable behavior "usually involves conduct by parties that is calculated to help them retain property in their possession and avoid liability by staying out of court: for instance, when companies act to avoid service in order to thwart their customers' attempts to bring suit against them." *Mesle,* 615 F.3d at 1094.

**<u>Defendants Matinee, S. Chin Kim, Paul Jeoung, and Tong Soo Chung</u>**

Here, Plaintiffs attempted to serve the Defendant Matinee by serving its last known registered agent, but discovered the agent had resigned without being replaced. Plaintiffs attempted to serve Defendants S. Chin Kim and Paul Jeoung at the Matinee Tucson office, but discovered the office closed and telephones disconnected. There was no forwarding address or telephone number. Defendant Matinee argues it was not deliberately avoiding service of process; there was simply some confusion involved when the company moved its place of business. (Reply (Doc. 57) at 6.) "The default was occasioned by inadvertence by Defendant Matinee when it closed its Arizona office . . . ." (Motion (doc. 48) at 4.)

Defendant Matinee charges that the alternative service made by Plaintiffs on it by serving the Arizona Corporation Commission was not proper because Plaintiffs could have served Matinee at its Nevada headquarters, (Complaint (Doc. 25) at 12), and as of September 19, 2012, its website reflected a new Nevada statutory agent.

Defendants S. Chin Kim and Paul Jeoung complain about being served by publication. They assert that if Plaintiffs had searched Nevada Corporation Commission

---

[1] Neglect encompasses simple, faultless careless omissions to act. *TCI Group,* 244 F.3d at 697 (quoting *Pioneer Inv. Servs Co.v. Brunswick Assocs Ltd. P'ship,* 507 U.S. 380, 388 (1993)).

5

1 records, Plaintiffs would have found information for S. Chin Kim, reflecting a San Mateo, California address. Alternatively, Defendants argue that Plaintiffs believed S. Chin Kim resided in either New York or New Jersey, (Complaint (Doc. 25) at 7), but Plaintiffs made no effort to find him there. Plaintiffs believed Paul Jeoung resided in California, (Complaint (Doc. 25) at 10), but Plaintiffs made no effort to find him there.

Defendants misstate their challenges because the alternative forms of service utilized in this case were proper under Fed. R. Civ. P. 4(e)(1) and Arizona law.[2] More accurately described, Defendants challenge is that the Plaintiffs failed to exercise due diligence in attempting personal service on them. Defendants assert that the record must reflect that in fact, the Plaintiffs did not know the residence of the Defendants. It is not enough to simply allege it; the record must reflect the efforts made by Plaintiffs to locate the Defendants. (Motion (Doc. 48) at 5 (citing *Llamas v. Superior Court in and For Pima County,* 474 P.2d 479, 460 (Ariz. 1970)); *Barlage v. Valentine*, 110 P.3d 371, 375 (Ariz. App. 2005).

Defendant asserts that Plaintiffs were aware he is a prominent attorney and former head of Invest Korea, a South Korean public organization which promotes Korean business. (Complaint (Doc. 25) at 36.) Therefore, Plaintiffs should have served Defendant Tong Soo Chung in South Korea. Plaintiffs, however, chose to serve Defendant Tong Soo Chung at the law offices of Lim, Ruger and Kim, LLP, by service made on Judy Kim. Defendant Tong Soo Chung argues she was not authorized to accept service for him. The Lim, Ruger & Kim law firm, is a California law firm, and Defendant Tong Soo Chung is of counsel with a designated place of practice being Los Angeles and area of practice being "corporate international." Defendant Tong Soo Chung, CEO of Matinee East-Asia region, directed

---

[2]The Court approved the alternative service by publication of Defendants S. Chin Kim (Doc. 19) and Paul Jeoung (Doc. 20). Under certain circumstances, 16 A.R.S. 4.1(j), the Arizona Corporation Commission may accept service on behalf of an entity. Plaintiffs asked the Arizona Corporation Commission to accept service for Defendant Matinee, it agreed, and Plaintiffs, accordingly, served Defendant Matinee.

Plaintiff Hankook Tech to retain Lim, Ruger & Kim, which required Hankook to waive a conflict of interest due to Tong Soo Chung's status as co-founder and being "of counsel" at the law firm.

Accordingly, service was properly made in California by leaving a summons and complaint at a Defendant's place of business. (Opposition (Doc. 51) at 12-13 (citing Cal. Code. Civ. P. §§ 415.20(b), 416.90, 416.10-416.90). The service documents were given to Judy Kim, the law firm's administrator, who Defendant Tong Soo Chung argues was not authorized to accept service on his behalf, but in the Ninth Circuit it suffices, if service is made upon "any individual so integrated with the organization that [she] will know what to do with the papers and who stands in such a position as to render it fair, reasonable and just to imply the authority on [her] part to receive service." *Id.* at 14 (quoting *Edwards v. Occidental Chemical Corporation,* 892 F.2d 1442, 1447 (9th Cir. 1990) (quoting *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc*., 840 F.2d 685, 688 (9th Cir. 1988)).

This Court approved the alternative service for Defendants S. Chin Kim and Paul Jeoung because it believed they were avoiding service of process, which was the same reason the Plaintiffs served Matinee alternatively.[3] When these Defendants left Arizona, they simply disappeared leaving no forwarding address or telephone number. They left town owing rent for their offices and owing wages to their employees. Neither their employees nor the landlord knew they were leaving or where they went. Their statutory agent resigned without being replaced. Plaintiffs checked the Nevada State Corporation Commission website mid-August and mid-September, but found no replacement agent. The Court notes that the information for Defendant S. Chin Kim would have reflected a California address, which does not coincide with Plaintiffs' belief he may reside in New York or New Jersey.

Perhaps, Plaintiffs could have chased the Defendants S. Chin Kim, Paul Jeoung, and Matinee longer or tried to serve them in other locals, as they did Defendant Tong Soo Chung.

---

[3]See n. 2.

1  But this is not a case where using a form of alternative service has caused the Defendants to
2  be uniformed of the Complaint against them. The record reflects that on September 22, 2012,
3  the Korean Times, a newspaper serving the Korean-America community, reported Defendant
4  Tong Soo Chung disavowed any involvement in the affairs between JES Solar and Matinee,
5  and he said he had not received a copy of the Complaint. But September 27, 2012, the
6  newspaper reported that on September 18, Defendant S. Chin Kim, sent a letter in response
7  to the JES Solar lawsuit asserting the litigation was invalid because JES Solar had filed for
8  bankruptcy.[4]         Additionally, an email on November 21, 2012, from the Lim, Ruger & Kim
9  law firm reflects counsel there was monitoring this lawsuit. The email reported the firm had
10 discovered the amendment of the Complaint to add Plaintiff Hankook, a previous client the
11 firm had represented, and consequently the firm informed the Plaintiff's attorney that it
12 would not be representing Defendant Tong Soo Chung in the Jes Solar action.

13        As for Defendant Paul Jeoung, he too had actual knowledge of the law suit because
14 he told Defendant Chun Rae Kim's father-in-law, John S. Lee, in September that Defendant
15 Matinee would be providing an attorney for Defendant Chun Rae Kim. (Supplement (Doc.
16 65: Affidavit ¶ 26.)

**Chun Ray Kim**

18        Defendant Chun Ray Kim admits he was properly served with the Complaint.
19 Accordingly, he knew an answer was due within 20 days.   After he was served with the
20 Complaint, he attests he contacted his father-in-law, who told him that Defendant Matinee
21 would file a timely appearance on his behalf, *id.* ¶ 26. He also received a copy of the default
22 entered by this Court on December 11, 2012, so he knew Matinee did not appear and answer
23 the Complaint. Again, he contacted his father-in-law and was told that Matinee would file
24 a Motion to Set Aside the Default on his behalf too, but when the motion was filed, he was

---

[4]Jes Solar is not in bankruptcy despite the extreme financial difficulties it experienced as a result of the fraudulent transactions by Defendants. (Opposition (Doc. 51) at 5-7.)

not represented. Accordingly, he was forced to file a Motion to Join, *pro se*, and then filed a Supplemental Motion to Vacate Default and to Oppose Plaintiffs' Motion for Default Judgment (Doc. 65). The Court finds that the evidence reflects that Defendant Chun Ray Kim intended to proceed in accordance with the other Defendants. He knew an answer was required, and was content to proceed in accordance with the other Defendants. Only now that he was not represented in the motion to set aside the default does Defendant Chun Ray Kim act independently.

**Defendants' Culpability**

The Court has no problem finding that the Defendants received at the very least constructive notice of the filing of the action. The Court finds that Defendants intentionally chose to not answer the Complaint to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process.

Defendants Matinee, S. Chin Kim, Paul Jeoung, and Tong Soo Chung's assertions of improper service are not only wrong, they do not provide a credible, good faith explanation for their failures to answer. Defendants do not even assert negligence in respect to not answering the Complaint; the only negligence Defendants suggest is related to oversights they made when closing the Tucson office that necessitated alternative service. Culpable behavior "usually involves conduct by parties that is calculated to help them retain property in their possession, and avoid liability by staying out of court: for instance, when companies act to avoid service in order to thwart their customers' attempts to bring suit against them." *Mesle,* 615 F.3d at 1094. The Defendants exhibited such culpable conduct, here.

This factor tips in favor of not setting aside the default, and especially cuts against setting aside the default for Defendants Matinee, S. Chin Kim, Paul Jeoung, and Tong Soo Chung.

**2. Whether Defendant has a meritorious defense**

**Defendants Matinee, S. Chin Kim, Paul Jeoung, and Tong Soo Chung**

After the Plaintiffs responded to the Defendants' Motion to Set Aside the Default, the Defendants filed a Reply, wherein they raised for the first time substantive defenses: 1) Plaintiffs have not been authorized by the Arizona Corporation Commission to do business in Arizona; 2) there is not complete diversity between the parties, and 3) Plaintiffs' Amended Complaint fails to allege facts sufficient to support claims for breach of contract, unjust enrichment, conspiracy, fraudulent inducement, and conversion.

Plaintiffs ask the Court to strike the Reply or allow it to file a Sur-Reply. The Defendants excuse their violation of the longstanding rule in the Ninth Circuit that a moving party must present all of its evidence or raise all of its legal arguments in a substantive brief, rather than a reply. The excuse is because a motion to set aside a default must necessarily be filed in "fire-drill" mode. "They have discovered they have lost a lawsuit they knew nothing about, they scramble to find counsel to represent them and counsel scrambles to assemble facts and documents from the clients and to research the law. Keeping in mind that timeliness is a key element of a motion to set aside default, counsel files a motion to set aside default with all of the information he has available, balancing the timeliness with completeness. That is what happened in this case." (Opposition to Motion to Strike (Doc. 60) at 2.) Defendants argue the Court should allow the Plaintiffs to file a Sur-Reply.

The Court does not believe this is what happened here because the record reflects the Defendants knew about this law suit from its inception. Nevertheless, the Court will not strike the Reply, and will instead allow the Sur-reply.

Default has been entered in this case and until set aside, the factual allegations of the Complaint are taken as true, but necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps,* 980 F.2d at 1267. The Court has reviewed the Amended Complaint and finds it pleads facts to support its claims of breach of contract, unjust enrichment, conspiracy, fraudulent inducement, and conversion.

10

The Complaint alleges the Defendants Matinee and Samsun, and their employees and agents, acted together in various ways, such as meeting with Plaintiffs, entering into contracts with Plaintiffs, and demanding advance payments from Plaintiffs, to fraudulently induce Plaintiffs to pay money to the Defendants. (Complaint (Doc. 25) ¶¶ 20-78.) The Complaint alleges Defendants perpetrated the alleged scam first on Plaintiff Hankook from approximately mid-July 2010, *id.* ¶ 27, to about March, 2011, when Defendants shifted their attention to Plaintiffs Jes Solar and Airpark, *id.* ¶¶ 41-42.

The Complaint alleges the Defendants induced the Plaintiffs to enter into contractual agreements by telling them that Defendants had secured financing from the United States government and JP Morgan Chase for the billion dollar project to construct a solar power plant. *Id.* ¶¶ 24, 43-44. Defendants caused Plaintiffs to incur expenses and costs, including payments under specified partnership agreements to Samsun for geotechnical investigations, inter-connection impact studies, public relations, and liaison services to JP Morgan Chase. *Id.* ¶¶ 28, 48-49. Defendants caused Plaintiffs to enter into specified contracts with Matinee whereby Plaintiffs agreed to be a buy-in, "turn-key" contractor for engineering, procurement and construction (EPC contractor) on the allegedly bogus solar power plant project. *Id.* ¶¶ 29, 30-31, 52-53. Defendants demanded advance payments from Plaintiffs under various auspices, such as telling Plaintiffs that they needed to put up their money before JP Morgan Chase would issue the line of credit financing, bringing Plaintiffs to meet with Matinee's well known and prestigious CEO Defendant Tong, *id.* ¶ 36, and conducting bogus groundbreaking ceremonies in Arizona, *id.* ¶¶ 58-64. In the end, there was no JP Morgan Chase financing because Matinee failed to provide disclosure of its assets as collateral, *id.* ¶ 72, and there was no solar power plant construction project. Plaintiffs repeatedly demanded that Defendants move forward with the construction project to no avail. *Id.* ¶¶ 39, 75. The Plaintiffs have incurred several million dollars in losses due to Defendant's breach of the contracts. *Id.* ¶¶ 28, 66, 124. These factual allegations support the claims challenged

by the Defendants.  The conspiracy count does not fail under Arizona law because it is not a stand alone claim, but is a claim that the Defendants conspired to commit fraud.  *Id.* ¶ 101. (Ds' Reply at 4.)

The Defendants' other two legal defenses also fail.

The Arizona statute, A.R.S. § 10-1501, which requires special authorization from the Arizona Corporation Commission for a foreign corporation to transact business in this state, does not apply.  The statutory requirements do not apply to conducting an isolated transaction that is completed within thirty days and is not taken in the course of repeated transactions of a like nature.  A.R.S. § 10-1501(B)(10).  To determine whether a foreign corporation is "doing business," the Court considers what is actually done in the state, not what could have been done under the contract.  *L.M. White Contracting Co. v. St. Joseph Structural Steel Co.*, 488 P.2d 196, 199 (Ariz. App. 1971).  There must be something more than an isolated single act; conduct in Arizona must be a substantial part of its ordinary business.  *Nat'l Union Indem. Co. v. Bruce Bros., Inc.,* 38 P.2d 648, 651 (Ariz. 1934).  And, simply maintaining, defending or settling a legal proceeding does not constitute transacting business within the meaning of the statute.  A.R.S. § 10-1501(B)(1).  Defendants do not submit any factual basis for application of this statute in this case.

The Defendants assert that Defendant Tong Soo Chung is a "stateless" U.S. citizen because he resides in South Korea and that this defeats diversity jurisdiction over the action. Citizenship for diversity purposes requires a showing that the party is a citizen of the United States and is domiciled in a state.  *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828-29 (1989); *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  In the Ninth Circuit, the longstanding rule is: "[a] person is 'domiciled' in a location where he or she has established a 'fixed habitation or abode in a particular place, and intends to remain there permanently or indefinitely.'"  *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986). The Court looks to factors such as current residence, voting registration and voting practices,

location of personal and real property, location of brokerage and bank accounts, spouse and family, memberships in unions and organizations, place of employment or business, driver's license and automobile registration, and payment of taxes. *Id.* at 750.

Defendant Tong Soo Chung provides an affidavit in which he attests that he has resided in South Korea since 2002, but he does not assert he is domiciled there and offers no evidence to suggest he intends to remain there permanently or indefinitely. The self-serving affidavit does not rebut Plaintiffs' evidence that Defendant Tong Soo Chung is employed as an attorney at Lim, Ruger, and Kim, LLP., in its Los Angeles office. Plaintiffs also tender a Schedule A (FEC Form 3) for the Federal Election Commission for the Defendant's Report of Receipts and Disbursements for an Authorized [election] Committee, which reflects a mailing address for Defendant Tong Soo Chung in Maryland. His domicile in Maryland would not destroy diversity. The Court retains diversity jurisdiction over this action.

**Chun Ray Kim**

Defendant Chun Ray Kim asserts he was dragged into the whole matter because his father-in-law, Defendant John S. Lee, the owner of Defendant Samsun, asked him to translate Korean to English on documents and at meetings between the parties. He asserts he runs a tofu restaurant in Virginia, and he was not paid any compensation of any kind for his involvement with Jes Solar. (Supplement Motion (Doc. 65-2): Affidavit ¶¶ 5, 24.) Additionally, Defendant Chun Rae Kim argues that his involvement was minimal, and the actions he took were taken at the express direction of the Plaintiffs.

"In fact, the one-hundred and six (106) paragraph Complaint only mentions Mr. Kim in three (3) of its paragraphs. Furthermore, the only paragraph that can be assumed to have been intended to allege conspiracy against Mr. Kim states that Mr. Kim 'formed a solar energy consulting company [J & A Solar, Inc.] on behalf of the Consortium that consisted of Plaintiffs Jes Solar and Airpark." (Chun Rea Kim Reply (Doc. 68) at 6; see also

Complaint at ¶¶ 54, 56.)  Defendant Chun Rae Kim cannot be found to have conspired with Plaintiffs to defraud them.

**Meritorious Defenses**

Defendants Matinee, S. Chin Kim, Paul Jeoung, and Tong Soo Chung offer no meritorious defenses, and this factor tips against setting aside the default entered against them.  Defendant Chun Rae Kim has alleged sufficient facts that, if true, would constitute a defense because a jury might find he was not an agent or employee of Samsun.  Except as an agent or employee of Defendant Samsun, the Complaint fails to allege sufficient facts to support the conspiracy charges against Defendant Chun Rae Kim.  This factor tips in favor of setting aside the default entered against Defendant Chun Rae Kim.

### 3. Whether the Plaintiff will be prejudiced

"To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." *TGI Group Life Insur. Plan,* 244 F.3d at 700. Rather, "the delay must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *Id.* at 701 (citing *Thompson v. Am. Home Assur. Co.,* 95 F.3d 429 (6th Cir.1996)).

Plaintiffs argue that delaying entry of the Judgment in this case allows the Defendants more time to abscond or dissipate assets that are the subject of the default. Plaintiffs offered to consent to setting aside the default, if Defendants would provide an accounting of their assets and how Plaintiffs' funds were disbursed, but Defendants refused. Plaintiffs assert this shows the Defendants' intend to continue to delay resolution of this action and the Plaintiffs' recovery of several million dollars.[5]

---

[5]Defendants seek to strike this argument, pursuant to Fed. R. Evid. 408, which prohibits the use of a settlement or compromise offer to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement, but the evidence may be considered for other purposes, such as proving bias, prejudice, to negate a contention of undue delay, or prove an effort to obstruct a criminal investigation or prosecution.  Here,

14

The Court notes that the Defendants Matinee, S. Chin Kim, Paul Jeoung, and Tong Soo Chung have had the advantage of using money that belongs to the Plaintiffs, while Plaintiffs have struggled financially to survive. The Court has found these Defendants are culpable of conduct calculated to help them retain property in their possession and avoid liability by staying out of court, such as acting to avoid service in order to thwart their customers' attempts to bring suit against them. If Defendant Chun Rae Kim's defense is true, he has not had such advantages and does not retain Plaintiffs' property in his possession.

The Court finds the factor of prejudice tips decisively against Defendants Matinee, Tong Soo Chung, Paul Jeoung, and S. Chin Kim because setting aside the default creates a continued opportunity for fraud and collusion. Prejudice is less of a factor for setting aside the default against Defendant Chun Rae Kim because he did not avoid service, and he has not absconded with and is not in a position to dissipate the assets that are the subject of the default.

### C.  Conclusion

The Court considers: (1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct by the Defendants led to the default. In applying these factors, the Court remembers that a judgment by default is a drastic step which is appropriate only in extreme circumstances, and a case should, whenever possible, be decided on the merits. The Court's discretion is especially broad to set aside a default as compared to setting aside a default judgment.

Defendants Matinee, S. Chin Kim, Paul Jeoung, and Tong Soo Chung have not offered any evidence or argument to tip even one factor in favor of setting aside the default, whereas Defendant Chun Rae Kim has at least presented a possible defense. Because a judgment by default is a drastic step and appropriate only in exceptional circumstances, the

---

the Plaintiffs proffer the evidence to show Defendants' intent to continue conduct that will obfuscate evidence and delay resolution of the case. The Defendants' Motion to Strike (Doc. 55) is denied.

Court sets the default aside for Defendant Chun Rae Kim. As to Defendants Matinee, S. Chin Kim, Paul Jeoung, and Tong Soo Chung, the Court finds this is an exceptional case and denies the Motion to Set Aside the Default.

**Accordingly,**

**IT IS ORDERED** that the Motion to Set Aside Default (Doc. 48) filed by Defendants Tong Soo Chung, Paul Jeoung, S. Chin Kim, and Matinee Energy is DENIED.

**IT IS FURTHER ORDERED** that the Supplemental Motion to Vacate Default (Doc. 65) filed by Chun Rae Kim is GRANTED, and the Clerk of the Court shall set aside the default entered against Defendant Chun Rae Kim.

**IT IS FURTHER ORDERED** that the Motion for Joinder by Chun Rae Kim in the Motion to Set Aside Default (Doc. 61) is DENIED AS MOOT.

**IT IS FURTHER ORDERED** that the Motion to Strike Paragraphs 9 and 10 (Doc. 55) filed by the Defendants is DENIED.

**IT IS FURTHER ORDERED** that the Motion to Strike Reply (Doc. 58) filed by the Plaintiffs is DENIED AS MOOT because Plaintiffs have filed a Sur-reply.

**IT IS FURTHER ORDERED** that the Motion to Supplement the Motion for Default Judgment (Doc. 45) is DENIED AS MOOT; the Defendants having now appeared, the matter of damages shall be set for trial.

**IT IS FURTHER ORDERED** that the Motion for Default Judgment (Doc. 41) remains pending for disposition by trial.

**IT IS FURTHER ORDERED** that the parties shall file a Joint Pretrial Order within 30 days of the filing date of this Order. Subsequently, a Pretrial Conference will be held by the Court.

DATED this 25th day of July, 2013.

David C. Bury
United States District Judge