WO

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Jes Solar Co., Ltd., a South Korean Corporation; Airpark Co., Ltd., a South Korean Corporation; and Hankook Technology, Inc., a South Korean Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>Matinee Energy, Inc., a Nevada Corporation; Samsun, L.L.C., a Virginia LLC., S. Chin Kim; John S. Lee; Chun Rae Kim; Paul Jeoung; Tong Soo Chung,<br><br>Defendants, | CV 12-626 TUC DCB<br><br>**O R D E R** |

The Court has repeatedly described the circumstances of this case, including the delay in the case up-front because Defendants evaded service, failed to answer and appear until after default was entered against them, then filed motions to set aside the defaults, followed by motions for reconsideration. The Court refused to set aside the defaults as to: Defendant Matinee Energy, Inc. (Matinee) and S. Chin Kim, Paul Jeoung, and Tong Soo Chung, who were acting individually and within the course of their employment with Defendant Matinee, and Defendant Samsun, LLC (Samsun[1]) and Defendant John S. Lee, who acted individually and within the course of his employment with Defendant Samsun. The Court granted Chun Rae Kim's motion and set aside the default, and he filed his Answer on August 7, 2013. (Answer (Doc. 74)).

The Court issued a case management Scheduling Order on September 18, 2013, setting a deadline for discovery on December 31, 2013, with dispositive motions due February 17,

---

[1] Samsun also referred to as Sam Sun. *See* D's MSJ. (Doc. 144.)

2014. On February 26, 2014, the Court granted a 30 day extension of discovery for the sole purpose of allowing Plaintiffs to answer Defendant's discovery requests, which he had served on them 15 days before the end of discovery. (Order (Doc. 99)). The Court granted the extension to afford Plaintiffs 30 days to respond as provided for under Fed. R. Civ. P. 33(b)(2). Discovery closed on March 26, 2014.

The parties both filed dispositive motions. On February 18, 2014, Plaintiffs filed a Motion for Partial Summary Judgment and a Motion for Leave to File a Second Amended Complaint. On February 19, 2014, the Defendant filed a Motion for Summary Judgment or, in the Alternative to Dismiss for Forum Non Conveniens. Additionally, Defendant challenges the Plaintiffs reliance on facts deemed admitted due to Defendant's alleged failure to timely object; Defendant seeks to withdraw the admission that Chun Rae Kim "prepared or caused to be prepared" an agreement between [Plaintiff] Hankook and Samsun." (Response to Ps, MPSJ[2] (Doc. 162) at 2-5.) Plaintiffs charge that Chun Rae Kim spoliated critical evidence in the case and seeks sanctions, including preclusion of any evidence negating his relationship with or financial interest in Samsun and J&A Solar Inc. (J&A Solar) and/or an adverse inference instruction at trial. (Motion for Spoliation (Doc. 168)). All motions are fully briefed and ready for disposition.

For the reasons explained below, the Court grants the Motion to Amend to add facts in support of Plaintiffs' claim of civil conspiracy against Defendant Chun Rae Kim. The Court denies the Plaintiffs' Motion for Partial Summary Judgment on the civil conspiracy claim because there are material questions of fact in dispute regarding Defendant Chun Rae Kim's involvement in the alleged fraudulent conspiracy. Likewise, the Court denies the Defendant's Motion for Summary Judgment. The Court allows the Defendant to withdraw his admissions, which were deemed admitted pursuant to Fed. R. Civ. P. 36(a). The Court denies the motion for sanctions for spoliation of evidence. The Court will set the case for trial.

/////

/////

---

[2]Plaintiffs' Motion for Partial Summary Judgment. (Doc. 137.)

- 2 -

1. Chun Rae Kim's Motion to Dismiss for Forum Non Conveniens

Normally, this Court would have to weigh numerous private and public interest factors to determine whether to dismiss a case for forum non conveniens: "dismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981). The parties' private interests include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 241, n. 6. Public-interest factors may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.*

But when venue is putatively governed by a valid forum selection clause, the considerations change in three ways. *Atlantic Marine Constr. Co., Inc. v. United States District Court*, 134 S. Ct. 568, 581 (2013). The Court may not accord any weight to the plaintiff's chosen forum. *Id.* The Court may not consider the parties' private interests. *Id.* at 582. Where there is a valid forum selection clause, the Court may only consider public interest factors. *Id.* "In all but the most unusual cases, therefore, the interest of justice is served by holding parties to their bargain." *Id.* at 583.

This is the most unusual of circumstances. Here, there is a forum selection clause in the Samsun-Jes Solar agreement. The parties agreed to a "competent court" to resolve disputes, not settled by the parties, which "shall be governed by the court where "A" [Jes Solar] is located," which is South Korea. (D's MSJ,[3] SOF Exhibits (Doc. 147) at Ex. 5: Collaborative Construction Agreement ¶ 2.) Enforcing the forum selection clause will split Jes Solar's civil conspiracy case. Jes Solar alleges that Defendant Matinee Energy and its employees conspired with each other and with Defendant Samsun and its employees, who likewise conspired with

---

[3]Defendant's Motion for Summary Judgment. (Doc. 144.)

- 3 -

each other and Matinee and its employees, to defraud the Plaintiffs by inducing Plaintiffs to enter into several contracts, with Defendants never intending to fulfil their contractual obligations related to the construction of the solar power plant.  Money paid by Plaintiffs, pursuant to the Samsun contract, was funneled to Defendant Matinee.

Plaintiffs would be forced to proceed piecemeal.  Except for Samsun, Plaintiffs could proceed, here, against all Defendants, including Chun Rae Kim, assuming that as he asserts he has no affiliation with Samsun.  If not separated from Samsun, dismissing the claims against Chun Rae Kim, one of two Samsun employees, would contravene federal policy favoring "efficient resolution of controversies." *See Frigate Ltd. v. Damia*, 2007 WL 127996 *3 (Calif. Jan. 12, 2007) (identifying a "plethora" of legal rules and doctrines designed to promote efficient resolution of cases, such as Fed. R. Civ. P. 18-20 and Rule 22 for joinder of claims and persons); *Curwood Inc. v. Prodo-Pak Corp.*, 2008 WL 644884 (E.D. Wis. March 7, 2008) (citing *Frigate*).  Given default is entered against Samsun and John S. Lee, forum non conveniens would split the claims against Chun Rae Kim-Samsun out to be brought in South Korea and leave the Samsun and John S. Lee-Samsun claims here.  This would not serve the interests of justice and would not be judicially economical.

    2.    <u>Chun Rae Kim's Motion for Summary Judgment on all Counts; Plaintiffs' Motion for Partial Summary Judgment against Chun Rae Kim for Civil Conspiracy</u>.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In determining whether to grant summary judgment, a court views the facts and inferences from these facts in the light most favorable to the non-moving party. *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 577 (1986).  A material fact is any factual dispute that might effect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is genuine if the evidence is such that a reasonable jury could resolve the dispute in favor of the non-moving party. *Id.*

The moving party is under no obligation to negate or disprove matters on which the non-moving party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-325

(1986). Rather, the moving party need only demonstrate that there is an absence of evidence to support the non-moving party's case. *Id.* If the moving party meets its burden, it then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed.R.Civ.P. 56(e)). To carry this burden, the party opposing a motion for summary judgment cannot rest upon mere allegations or denials in the pleadings or papers. *Anderson*, 477 U.S. at 252. The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586. "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

This trilogy of 1986 cases opened the door for the district courts to rely on summary judgment to weed out frivolous lawsuits and avoid wasteful trials. *Rand v. Rowland*, 154 F.3d 952, 956 -957 (9th Cir. 1998);10A Charles A Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure*, § 2727, at 468 (1998). As explained in *Celotex*: "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The Judge's role on a motion for summary judgment is not to determine the truth of the matter or to weigh the evidence, or determine credibility, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 252.

Chun Rae Kim asserts that there are no genuine issues of fact in dispute and no evidence to support any of Plaintiffs' claims against him. In response, Plaintiffs "clarify their claims against Mr. Kim. . . . [T]he primary count, among others, that Plaintiffs claim as to Mr. Kim, is civil conspiracy to commit a tort– fraud and conversion." (Ps' Response to D's MSJ (Doc. 167) at 2.) Plaintiffs seek partial summary judgment against Chun Rae Kim for civil conspiracy. "Additionally, as to Mr. Kim, Plaintiffs claim breach of contract and unjust enrichment in conjunction with their alter ego theory." *Id.*

By default, the following allegations in the Plaintiffs' First Amended Complaint (FAC) have been established. Defendants represented to Plaintiffs that they had initiated a solar power plant construction project with a project budget of more than $5 billion in the States of California, Arizona and Nevada (the "Matinee Project") (First Amended Complaint (FAC) (Doc. 25) ¶¶ 24, 43.) Defendants represented that the Matinee Project was funded by a U.S. government subsidy and financing from JP Morgan Chase in the amounts of $1.3 billion and $3.6 billion, respectively. Id. ¶¶ 24, 45. These were false representations. *Id.* ¶¶ 38-40, 72, 74, 89, 100, 110.

Relying on these and other representations by Defendants, Plaintiffs entered into several agreements with Defendants Samsun and Matinee. *Id.* ¶¶ 28, 29, 31, 48, 52, 65. Defendants demanded advance fee payments by Plaintiffs to Samsun, Matinee's agent, if Plaintiffs desired to participate as a contractor in the Matinee Project. *Id.* ¶¶ 27, 48-49. Plaintiffs paid the requested advance fees as follows: Plaintiff Hankook paid Defendant Samsun $500,000 over the course of July 26, 2010 through November 5, 2010, *id.* ¶ 28; the Consortium (Jes Solar-Airpark) paid Samsun $500,000 by two payments in August and September of 2011 and paid $60,000 to New EnerTech Co., Ltd, a South Korean Corporation designated by Samsun as its subcontractor, *id.* ¶ 55; and on November 1, 2011, the Consortium wired $1 million dollars to J&A Solar, *id.* ¶ 66, an Arizona corporate entity created as a special purpose company to assist the Consortium in its performance for the Matinee Project, (Ps' MPSJ, SOF (Doc. 140), Ex B: Hong Depo. ¶ 7). Plaintiffs' money was transferred from J&A Solar to Samsun and Matinee. (FAC (Doc. 25) ¶ 66.)

Defendants knew their representations were false and made them with the intent to induce the Plaintiffs, in reliance on the misrepresentations, to pay approximately $2 million dollars to Defendants. *Id.* ¶¶ 113-117. "Prior to the execution of the Agreements and the demands to Plaintiffs for advance payments, Defendants, in conjunction with each other, had the intent to promote or aid in the commission of an offense or unlawful objective, namely to defraud Plaintiffs." (FAC (Doc. 25) ¶ 101.) Plaintiffs have proved the tort claim of fraud and the claim of conspiracy to defraud claim as to the defaulted Defendants.

- 6 -

By default, Plaintiffs have established that Matinee is a sham corporation, which serves as the alter ego of Defendants Chin, Paul and Tong, and Samsun is a sham corporation, which serves as the alter ego of Defendant John S. Lee. The Plaintiffs may pierce the corporate veil for both Matinee and Samsun and hold Defendants Chin, Paul and Tong personally responsible for the obligations of Matinee and hold Defendant John S. Lee personally responsible for the obligations of Samsun. (FAC (Doc. 25) ¶¶ 126-128.) Whether Samsun is the alter ego of Defendant Chun Rae Kim remains in dispute and hinges on the unity between Samsun and Chun Rae Kim. *Standage v. Standage,* 711 P.2d 612, 615 (Ariz. App. 1985). The determination of whether a corporate entity is a mere instrumentality of an individual is a question of fact. *Id.; Servo Kinetics, Inc. v. Tokyo Precision Instruments Co. Ltd.,* 475 F.3d 783, 798 (6th Cir. 2007). Plaintiffs have established the existence of a fraudulent conspiracy. It remains a question of fact: whether Chun Rae Kim was a member of this conspiracy.

The Court set aside the default as to Chun Rae Kim because he asserted that he had been dragged into the matter by his father-in-law, John S. Lee, and his involvement was limited to translating Korean to English on documents and at meetings. He had received no compensation for his services. The Court found he "alleged sufficient facts that, if true, would constitute a defense because a jury might find he was not an agent or employee of Samsun." (Amended Order (Doc. 71) at 14.)

Since the default was set aside for Defendant Chun Rae Kim, the parties have conducted discovery. By deposition, Chun Rae Kim admits he and John S. Lee were the only two employees of Samsun, that he was promised a salary of $2000 a month, but he asserts he was never paid the promised salary. (P's MPSJ, SOF (Doc. 140), Ex. D: Kim Depo. at 40, 111, 212.)

Chun Rae Kim reurges his affidavit, which accompanied his Motion to Set Aside Default, as evidence to support his Motion for Summary Judgment and to rebut Plaintiffs' Motion for Partial Summary Judgment. Plaintiffs challenge the affidavit as self-serving. While the Court cannot reject Defendant's evidence because it consists only of his self-serving testimony, *United States v. One Parcel of Real Property*, 904 F.2d 487, 492 (9th Cir. 1990), a

self-serving affidavit lacking detailed facts or supporting evidence is insufficient to create a genuine issue of material fact. *Id.*; *Federal Trade Commission v. Publishing Clearing Home, Inc.,* 104 F.3d 1168 (9th Cir. 1997); *Nilsson v. City of Mesa*, 503 F.3d 947, 952 n. 2 (9th Cir. 2007). But for this self-serving affidavit, Plaintiffs assert there is no evidence to support Chun Rae Kim's assertion that he was involved only to a very limited extent and did not know of nor intend to be involved in the conspiracy to defraud the Plaintiffs.

Plaintiffs submit documentary evidence to counter Chun Rae Kim's assertions of "limited involvement" and "lack of knowledge." For example, domain history for Samsun's website reflects creation on September 20, 2010, with Chun Rae Kim as the registrant and administrator of the official website, using his address and telephone number. (Ps' MSJ, SOF (Doc. 140) at Exs. A1 and A2: website and domain history.)[4] The website reflects Samsun as being an expert in the energy industry, well staffed, and highly experienced in both the regulatory and functional areas of utility operations. *Id.* at Ex. A1. Chun Rae Kim admits to having no personal expertise related to the solar power industry; he owns a restaurant and is a part time mortgage broker. While he refuses to admit to knowing that his father-in-law had no expertise in the solar power industry, he was forced to admit he was unaware of any training or experience on the part of his father-in-law which would qualify John S. Lee to perform the services advertised on the Samsun website. (Ps' MPSJ, SOF (Doc. 140), Ex. D: Kim Depo. at 130-136, 183-186.) Arguably, these admissions reflect that Chun Rae Kim knew the representations made on Samsun's website were false. (Ps' MPSJ (Doc. 137) at 4-6.) But, Chun Rae Kim denies being responsible for the website. He asserts he only helped John S. Lee find a domain name and introduced him to a web-developer, who designed the Samsun website. *Id.* at 137, 141.

Chun Rae Kim's home address is listed with the Virginia Corporation Commission as Samson's principle office address. (Ps' MSJ, SOF (Doc. 140) at Ex. A3.) By law, Samsun's business records must be kept there, specifically: the company's articles of organization, federal

---

[4]The documents indicate Joseph Kim as the registrant and administrator. See (P's MPSJ, SOF (Doc. 140), Ex. D: Kim Depo. at 13 (admitting to using the name Joseph Kim).

- 8 -

and state tax returns, written operating agreement, cash statement, description and statement of property valuation and right of any member to receive distributions. VA Code Ann § 13.1-1028. At his deposition, Chun Rae Kim expressed surprise regarding the use of his residence address as Samsun's principle office and his legal record keeping responsibilities. ((D's MSJ, SOF, Exhibits (Doc. 146) at Ex. 2: Kim Depo. at 111-112.)

Defendant Chun Rae Kim was responsible for incorporating J&A Solar and signed the incorporation disclosure documents for J&A Solar, Inc. as President. He gave his address as the address for individuals representing Jes Solar, who actually resided in Korea. *Id.* at Ex. A4. He and Jeoung Dong Song, an employee of Jes Solar, opened a bank account for J&A Solar at Wells Fargo in Tucson, Arizona. (Supp. Motion to Vacate Default (Doc. 65), Ex. 2: Chun Rae Kim Affidavit ¶ 13.) Chun Rae Kim's name was on the account when the money transfers totaling $1 million were made November 2011, *id.* ¶ 14, until January 1, 2012, when his name was removed by Jeoung Dong Song, which was after the Consortium money was transferred from J&A Solar to Defendants in November 2011, *id.* ¶¶ 14,17.

Plaintiffs charge Chun Rae Kim with spoliation of evidence for his failure to retain or secure corporate books and records, and other business and administrative documents or files for Samsun and J&A Solar. Plaintiffs assert these documents would reflect Chun Rae Kim's involvement or role in the fraudulent conspiracy, where the money went, and whether Chun Rae Kim benefitted from the transferred funds. (Ps' Spoliation Motion (Doc. 168) at 4.)

"'A party seeking sanctions for spoliation of evidence must prove the following elements: 1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered, 2) the destruction or loss was accompanied by a 'culpable state of mind,' and 3) the evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery of the spoliated evidence.'" *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d. 997, 1005 (D. Ariz. 2011) (quoting *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 509 (Md. 2009)).

Defendant Chun Rae Kim asserts he never had any Samsun records and so could not destroy them and has no control over Defendants John S. Lee and Samsun and so could not

secure and/or produce Samsun's business records. He asserts that he filed the incorporation documents for J&A Solar at the request and direction of the Plaintiffs, and Plaintiffs and their agents should have the records for J&A Solar. (D's Response to Ps' Spoliation Motion (Doc. 175) at 2.)

Plaintiffs assert Chun Rae Kim had an affirmative duty to preserve evidence that he knew or reasonably should have known to be relevant to this litigation. *Id.* at 7-8 (citing *Souza v. Fred Carries Contracts, Inc.*, 955 P.2d 3, 6 (Ariz. App. 1997). The duty is not passive; it requires litigants to take affirmative actions. *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003); *In re Napster, Inc. Copyright Litigation*, 462 F. Supp.2d 1060 (Calif. 1987)). Plaintiffs argue that Chun Rae Kim "intentionally (or at least negligently) avoided his affirmative duty to preserve or retrieve key evidence to the detriment of Plaintiffs[.]" *Id.*

The Court finds that the Plaintiffs have not established that Chun Rae Kim had control over any business records for Samsun or J&A Solar or that he destroyed any such business records. Plaintiffs assertion of control is based on the statutory requirement that Samsun's corporate records be kept at Chun Rae Kim's residence address. Therefore, Plaintiffs' argue, he had an affirmative duty to get the Samsun records from his father-in-law, John S. Lee, and that all he had to do was ask for them. But, the case law relied on by Plaintiffs, which requires corporate officers to communicate to employees that they have an obligation to preserve discoverable material in their possession, does not reach so far. There is no evidence that Chun Rae Kim had any corporate officer authority over John S. Lee or any power to demand John S. Lee produce or turn over to Chun Rae Kim the Samsun business records sought by Plaintiffs. Plaintiffs can and have secured corporate documents for Samsun from the Virginia corporation commission, and Plaintiffs have as much, if not more access than Chun Rae Kim,to J&A Solar's business records. The Court denies the Spoliation Motion.[5]

---

[5]To prevail on its spoliation motion, Plaintiffs must persuade the Court on the ultimate question of fact: the extent of Defendant Chun Rae Kim's relationship with Samsun and his involvement in the conspiracy to defraud the Plaintiffs. As a sanction, Plaintiffs ask the Court to preclude Chun Rae Kim "from offering any evidence or testimony to negate any matters regarding Samsun and J&A Solar, including, but not limited to, his relationship with or financial

In addition to the evidence related to Chun Rae Kim's involvement with Samsun and J&A Solar, the official website for the Arizona Corporation Commission reflects that on August 30, 2011, Chun Rae Kim signed incorporation disclosure documents for SN Solar, Inc., a solar energy consulting company. Chun Rae Kim identified himself as President and one of four directors, and gave his residence address for all the directors. (Ps' MPSJ, SOF (Doc. 140), Ex. A5.) Jeoung Dong Song, Jes Solar's employee associated with J&A Solar was identified as SN Solar's Director, but Jes Solar was unaware of SN Solar's creation and did not approve Jeoung Dong Song acting as Director. *Id.*, Ex. B: Hong Affid.; Ex. C: Choi Affid; *see also* (Ps' MPSJ, SOF (Doc. 140), Ex. D: Kim Depo. at 199.) Jes Solar has sued Jeoung Dong Song in Korea. *Id.*: Ex. B: Hong Affid. ¶ 7; Ex. C: Choi Affid. ¶ 8. Also, on September 27, 2011, Chun Rae Kim incorporated Samsun Energy, Inc., in Arizona, with Chun Rae Kim as one of three directors, and John S. Lee and his wife, Mary Sun Lee, as the other two directors. (Ps' MPSJ, SOF (Doc. 140), Ex. A6.)

On July 16, 2011, Chief Executive Officer for Plaintiff Jes Solar, Jae Kyung Choi, met in New York with Matinee and Samsun. Chun Rae Kim picked him up at the airport and drove him to his hotel. Chun Rae Kim was introduced as staff of Samsun and was present at the meeting which took place in the lobby coffee shop. The meeting was conducted in Korean and took two to three hours. Chun Rae Kim indicated agreement with Matinee's executive officer, Paul Jeoung, who explained the solar power construction project to Jae Kyung Choi. *Id.* Ex. C: Choi Affid. at 1-2.

Towards the end of the meeting, John S. Lee, explained that "the partnership agreement between Jes Solar and Samsun would require Jes Solar to pay fees to Samsun and to set up a company in the United States [J&A Solar] in which Samsun would participate in return for

---

interest in them." (Spoliation Motion (Doc. 168) at 10.) While Plaintiffs submit they seek only limited relief, if all testimony and evidence negating Chun Rae Kim's involvement with Samsun and J&A Solar, "including, but not limited to, his relationship with or financial interest in them," is precluded, his defense of innocence fails because it is based on his assertions of not being involved, financially or otherwise, in Samsun or J&A Solar. Plaintiffs would be entitled to summary judgment; this is not a limited sanction.

- 11 -

Samsun's professional services including a procurement of a contract for Jes Solar in the Matinee Project." *Id.* ¶ 6. Either John S. Lee or Chun Rae Kim demanded that the Jes Solar-Samsun partnership agreement be signed immediately or Samsun, acting as Matinee's sole agent, would look for another investor. *Id.* Choi signed the agreement and Chun Rae Kim then drove him to S. Chin Kim's residence, where S. Chin Kim explained the overall Matinee Project, which Chun Rae Kim and John S. Lee listened to, and Choi signed the Jes Solar-Matinee agreement. *Id.*

On October 27, 2011, Young Joon Hong, Director of Plaintiff Airpark, met with Matinee in Tucson. *Id.* Ex. D: Hong Affid. ¶¶ 2-3. John S. Lee and Chun Rae Kim attended the meeting as Samsun employees, acting as Matinee's agent. *Id.* Hong understood the meeting was being held for Samsun as the service provider to the Consortium to make a general presentation regarding the progress of the Matinee Project in Arizona. *Id.* ¶ 5. The meeting lasted two hours, with John S. Lee explaining Samsun's expertise in solar business, its experienced staff, its readiness to begin the project, and the project's progress regarding necessary permits and financial arrangements. *Id.* Chun Rae Kim expressed his agreement with what John S. Lee was saying, nodded his head, made brief remarks, and answered a few questions. *Id.* Hong signed the Consortium-Matinee agreement and attended a groundbreaking ceremony in Benson, Arizona. *Id.* ¶ 6.

Having denied Plaintiffs motion to preclude for spoliation, the Court considers Defendant Chun Rae Kim's rebuttal that none of the Plaintiffs-Samsun contracts reflect him as a signatory, and he argues that none of the contracts were relevant to him: Hankook-Samsun Partnership Agreement (July 25, 2010); Jes Solar-Samsun Partnership Agreement (July 16, 2011), and the translation of the Jes Solar-Samsun Partnership Agreement. Chung Rae Kim's rebuttal, especially his denial that he never saw nor translated the Jes Solar-Samsun Partnership Agreement, (Ps' MPSJ, SOF, Ex. D: Kim Depo. at 171, 219-221), bumps against his admission that the primary reason John S. Lee enlisted his services was to translate documents. These agreements where the mechanisms by which Samsun committed the fraud, and the fraudulent

- 12 -

transfers were made via J&A Solar, the entity Chun Rae Kim admittedly incorporated, designating himself as President.

As to the Hankook-Samsun Partnership Agreement, pursuant to Fed. R. Civ. P. 36(a)(3), Chun Rae Kim failed to timely answer or object to Plaintiffs' request for admissions and, thereby is deemed to have admitted that he prepared and caused it and a letter requesting advance payment of fees to be sent to Plaintiff Hankook. Chun Rae Kim's discovery responses were due December 4, 2013. Late, he sought an extension of time to respond. According to Plaintiffs, they agreed in part to extend the time for him to produce documents, but refused the extension for him to respond. According to Chun Rae Kim, Plaintiffs agreed to the extension of time, without any reservation as to the request for admissions. Chun Rae Kim answered on December 12, 2013, and denied preparing or sending either the agreement or the letter.

The record reflects that upon receiving the late responses to the requests for admissions, Plaintiffs did in fact request that Chun Rae Kim file a Rule 36(b) motion to withdraw. (D's Response to Ps' MPSJ (Doc. 162), Ex. 2: email 12/16/2013 at 2:49pm.) Chun Rae Kim, who was then proceeding *pro se*, replied by email asking what Plaintiffs meant by a motion to withdraw and whether they were referring to his affidavit. *Id.* at email 12/16/2013; 2:33pm. These emails support Plaintiffs position. However, on December 17, 2013, Plaintiffs emailed Chun Rae Kim that they had reviewed his December 12, 2013, discovery responses and asked him to lift his "improper" objections and to properly respond to the requests for admissions. Plaintiffs presented this email as being a good faith effort to settle the discovery dispute which included the "improper" responses to their requests for admissions and Chun Rae Kim's failure to produce documents. *Id.* at email 12/17/2013; 1:04pm. These emails support Chun Rae Kim's position.

On December 27, 2013, Chun Rae Kim provided Plaintiffs with substituted admissions. Plaintiffs inquired about subject matter in the substituted admissions during Chun Rae Kim's deposition on December 30, 2013. Ps' MPSJ, SOF, Ex. D: Kim Depo. at 210-212. In light of Plaintiffs' emails which suggested withdrawal to be unnecessary, the Court finds Chun Rae Kim's delay reasonable in not filing the motion to withdraw until Plaintiffs sought to rely on

this one fact as deemed admitted in Plaintiffs' Motion for Partial Summary Judgment. Chun Rae Kim is now represented by counsel.

Under Fed. R. Civ. P. 36(b), two requirements must be met before an admission may be withdrawn: 1) presentation of the merits of the action must be subserved, and (2) the party who obtained the admission must not be prejudiced by the withdrawal." *Conlon v. United States*, 474 F.3d 616, 625 (9th Cir.2007). "The first half of the test in Rule 36(b) is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case." *Id.* at 622 (citing *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995)). "Thus, the question is not whether allowing the deemed admissions would have any effect on a trial on the merits of the case; it is whether it would eliminate the need to reach a trial on the merits at all." *Carden v. Chenega Security & Protection Servs.*, LLC, 2011 WL 1344557, at *2 (E.D.Cal. Apr.8, 2011).

Plaintiffs assert the question hinges on whether withdrawal will subserve the important interests of presentation of the merits of the action, and the withdrawal of this one admission is not dispositive because it is just one piece of evidence suggesting the degree of involvement by Chun Rae Kim. Plaintiffs, however, fail to address the motion to withdraw in the context of all the deemed admissions, if Chun Rae Kim's December 27, 2013, substituted answers are rejected. Plaintiffs assert they are prejudiced because they do not have any documentary evidence to prove the degree of involvement by Chun Rae Kim in the alleged conspiracy because of Chun Rae Kim's spoliation. Plaintiffs assert prejudice because they relied on the admission and did not delve into the matter admitted during his deposition. The Court has rejected Plaintiffs' assertion of spoliation. The answers were only seven days late, and Plaintiffs had every opportunity to challenge Chun Rae Kim's denial at his deposition. The Court grants Chun Rae Kim's request to withdraw the admissions and substitute them for the admissions mailed to Plaintiffs on December 27, 2013.

Chun Rae Kim attests that Plaintiffs' claims against him fail because he is an owner of a Korean Tofu Restaurant in Centerville, Virginia and works part-time as a mortgage broker. (D's MSJ, SOF, Exhibits (Doc. 146) at Exs. 1 and 2: Kim Depo. at 20.) He has no knowledge,

- 14 -

experience, or skills related to solar power plants or their construction. *Id.* at 47-48. He was hired as an employee for Samsun and promised a salary of $2000 per month, *id.* at 30, but never received any form of compensation from Samsun or from Defendant John S. Lee, *id.* at 33. Chun Rae Kim is not an officer, director, or member of Samsun. *Id.* at 117. He had no knowledge that Defendant John S. Lee listed his home as Samsun's principal place of business. *Id.* at 111-112. As an employee with no expertise on solar power, he was not aware of the intricacies of Samsun's business or its operations. *Id.* at 61. His duties were limited to translating, booking travel, getting coffee, and driving for Defendant John S. Lee. *Id.* at 66-67, 68, 77. Chun Rae Kim attests that Defendant John S. Lee did not inform him of matters relating to the company but kept them confidential. *Id.* at 61.

Chun Rae Kim denies that on the two particular occasions when Plaintiffs met with Samsun and Matinee, he did not make any representations or participate in the meetings. *Id.* at 62, 66-67, 68, 77. He asserts he incorporated J&A Solar Inc. at the instruction of Plaintiff Jes Solar. *Id.* at 160, 163. He did not participate in any matters of the J&A Solar enterprise, *id.* at 161, and only helped due to his United States citizenship, *id.* at 162. He did not know of the alleged unauthorized transfers prior to, or at the completion of, the transfers, (Supp. Motion to Vacate Default (Doc. 65), Ex. 2: Chun Rae Kim Affidavit ¶¶ 16), which were done at the direction of Plaintiffs' agent J.D. Song, *id.* at 18, who plaintiffs are currently suing in South Korea, *id.* at 19.

The Court finds that material questions of fact exist which preclude summary judgment for either side. Plaintiffs present documentary evidence suggesting that Chun Rae Kim was more involved than only translating some documents for his father-in-law, driving, and bringing coffee to the other participants involved in the conspiracy.

By default Plaintiffs have established a civil conspiracy: that two or more people agreed to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, here, fraud, causing damages. *Wells Fargo Bank v. Arizona Laborers, Teamsters . . . Local 395 Pension Trust Fund*, 38 P.3d 12, 37 (Ariz. 2002) (citations omitted). The question is whether Chun Rae Kim was a member of that conspiracy or aided and abetted it. To prove their claim

against Chun Rae Kim, Plaintiffs must establish by clear and convincing evidence he actually agreed to participate in the conspiracy. *Id.* at 36-37. Chun Rae Kim may also be liable for damages if he knowingly acted to substantially aid another to commit the conspiracy to defraud the Plaintiffs. *Id.* at 37.

"The existence of a conspiracy may be inferred from the nature of the acts, the relationship of the parties, 'the interests of the conspirators, or other circumstances,' and 'express agreement or tacit concert will, if proven, suffice to create liability.'" *Mohave Electric Cooperative v. Byers,* 942 P.2d 451, 465 (Ariz. App. 1997). "'The easiest situation in which to draw the inference of agreement is where the parties are on the scene together at the same time performing acts in support of one another.'" (Ps' MPSJ (Doc. 137) at 13 (citing *Halberstam v. Welch*, 705 F.2d 472, 481 (D.C. Cir. 1983)).

Here, Plaintiffs present evidence to raise a question of fact that Chun Rae Kim was acting in concert with John S. Lee, as an agent of Samsun, or intentionally acting pursuant to a common course of conduct to defraud the Plaintiffs of approximately $2,000,000. Plaintiffs certainly present evidence to raise a question of fact that Chun Rae Kim substantially assisted John S. Lee in making representations regarding Samsun's expertise and services it could provide, which Chun Rae Kim knew to be false.

On the other hand, Chun Rae Kim offers detailed attestations by deposition and affidavit which suggest he did not intend to participate in the alleged conspiracy to defraud the Plaintiffs. For example, he attests to not knowing about Samsun being incorporated with his home address as its place of business address and that he did not do Samsun's web design, but only registered its domain name. Intent is a question for the fact finder. *Wells Fargo*, 38 P.3d at 33 (citing *Snow v. Western Savings & Loan Assn.*, 730 P.2d 204, 211 (Ariz. 1987)). This is enough, without any additional supporting evidence.

The Court concludes: "Clearly, it [will] make a world of difference which version of events the trier of fact believes." *1 Parcel of Real Property, Lot 4, Block 5 of Eaton Acres*, 904 F.2d at 492. The Court denies the parties' summary judgment motions.

/////

3.  Motion to File Second Amended Complaint to add Facts.

The Court grants Plaintiffs leave to file the Second Amended Complaint to add facts, conforming to the evidence, to more specifically state the claim of civil conspiracy against Chun Rae Kim. There is no need for additional discovery or delay. The additional facts reflect evidence discovered from Chun Rae Kim's deposition and documentary evidence that was timely disclosed to Chun Rae Kim. Therefore, there is no surprise, no prejudice, and no need for further discovery. Pursuant to Fed. R. Civ. P. 15(a), the Court grants leave to amend freely and grants the Plaintiffs' Motion for leave to file the Second Amended Complaint.

**Accordingly,**

**IT IS ORDERED** that Plaintiffs' Motion for Partial Summary Judgment (Doc. 137) is DENIED.

**IT IS FURTHER ORDERED** that the Defendant's Motion for Summary Judgment (Doc. 144) is DENIED.

**IT IS FURTHER ORDERED** that the Motion for Leave to File Second Amended Complaint (Doc. 141) is GRANTED**; the Plaintiffs shall file the Second Amended Complaint within 10 days of the filing date of this Order.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Spoliation (Doc. 168) is DENIED.

**IT IS FURTHER ORDERED** that Defendant's Motion to Withdraw admissions deemed admitted (Doc. 162) is GRANTED; Defendant's answers are those substituted on December 27, 2013.

**IT IS FURTHER ORDERED** that within 30 days of the filing date of this Order, the parties shall file the Proposed Pretrial Order.

DATED this 24th day of June, 2014.

David C. Bury
United States District Judge